**E-FILED**
Thursday, 03 March, 2016  09:42:23 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **TONI KNUFFMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 14-3301** |
| | ) | |
| **MCWANE INC., d/b/a** | ) | |
| **MANCHESTER TANK,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### <u>OPINION</u>

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the parties' cross motions for summary judgment.  <u>See</u> d/e 12; d/e 14.  Because genuine issues of material fact remain, the Motions (d/e 12, 14) are DENIED.  In addition, the Court DENIES AS MOOT Defendant's Motion to Strike Portions of the Declaration of Philip Bareck (d/e 16) because the Court does not rely on any of the disputed statements to find a genuine issue of material fact.

### I. JURISDICTION

In August 2014, Plaintiff Toni Knuffman filed a lawsuit against Defendant McWane Inc., d/b/a Manchester Tank, in Illinois state

court, Adams County Case No. 14-L-43.   Plaintiff alleged that
Defendant retaliated against Plaintiff for filing a workers'
compensation claim relating to a left shoulder injury.   Defendant
removed the action to this Court asserting complete diversity
between the parties and an amount in controversy in excess of
$75,000 exclusive of interest and costs.   See Notice of Removal (d/e
1).   Plaintiff did not object to removal.   See Pl.'s Resp. (d/e 3).

Plaintiff is a citizen and resident of Illinois.   See First Amended
Compl. ¶ 2 (d/e 1-1).   Defendant is a Delaware corporation with its
principle place of business in Birmingham, Alabama.   See Notice of
Removal ¶ 8 (d/e 1); see also Illinois and Alabama corporation
websites (all websites last visited March 3, 2016).[1]   Therefore, the
Court finds that the parties are completely diverse.

As for the amount in controversy, Plaintiff does not seek a
specific dollar figure in her complaint, but she filed her case as an
"L" case, which means that Plaintiff was seeking damages in excess
of $50,000.   See Adams County Circuit Clerk Schedule of Fees,
www.co.adams.il.us/circuit_clerk/fees.htm. In addition, Plaintiff

---

[1] www.cyberdriveillinois.com/departments/business_services/corp.html;
http://www.sos.alabama.gov/vb/inquiry/inquiry.aspx?area=Business%20Enti
ty

seeks lost wages and benefits, the value of compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct, and punitive damages.

Defendant asserts that, at the time of removal, Plaintiff's back pay totaled $18,684.17 based on a gross yearly pay of $23,601.06. See BEM I, L.L.C. v. Anthropologie, Inc., 301 F.3d 548, 552 (7th Cir. 2002) (noting that the amount in controversy is determined on the date of removal).   Three years of front pay, in addition to the $18,684.17 in back pay, would result in a total of $89,487.35, which puts the case above the $75,000 amount-in-controversy threshold.  See Notice of Removal ¶ 11.  Additionally, Defendant asserts that, even without the front pay calculation, compensatory damages plus punitive damages of four times the amount of back pay would also put the case above the $75,000 amount-in-controversy threshold.  Id. ¶ 12   The Court agrees with Defendant.

Plaintiff's request for front pay and back pay would put the case above the $75,000 amount-in-controversy threshold.  See Cunningham v. Manpower Prof'l Servs., Inc., No. 07-cv-656-JPG, 2008 WL 754004, at *3 (S.D. Ill. Mar. 18, 2008) (finding that the retaliatory discharge plaintiff's request for "lost wages into the

future indefinitely" supported the conclusion that the amount in controversy exceeded $75,000).  Moreover, punitive damages can satisfy the minimum amount in controversy if punitive damages are available under state law.  LM Ins. Corp. v. Spaulding Enters. Inc., 533 F.3d 542, 551 (7th Cir. 2008).  If punitive damages are available under state law, "subject matter jurisdiction exists unless it is legally certain that the plaintiff will be unable to recover the requisite jurisdictional amount."  Id. (quotations and citations omitted).

In Illinois, punitive damages are available for retaliatory discharge claims.  Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 186-87 (1978).  In addition, the Court finds that is not legally certain that Plaintiff will be unable to recover the requisite jurisdictional amount.  Plaintiff alleges conduct that could constitute willful and wanton action by Defendant.  Back pay and punitive damages would put the amount-in-controversy above $75,000.  Because the parties are diverse and the amount in controversy exceeds $75,000, this Court has jurisdiction.

Venue is proper in this district because a substantial part of the events giving rise to the claim occurred in Quincy, Illinois.  28

U.S.C. § 1391; <u>see</u> <u>also</u> CDIL-LR 40.1(B) (providing that complaints arising from Adams County will be filed in the Springfield Division).

## II. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  No genuine issue of material fact exists if a reasonable jury could not find in favor of the nonmoving party.  <u>Brewer v. Bd. of Trs. of the Univ. of Ill.</u>, 479 F.3d 908, 915 (7th Cir. 2007).  When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor.  <u>Woodruff v. Mason</u>, 542 F.3d 545, 550 (7th Cir. 2008).

## III. FACTS

The following facts are taken from the parties' statements of undisputed facts.

Defendant is a manufacturer of pressure vessels for the containment of propane, compressed air, and chemicals. Plaintiff began her employment with Defendant in September 2006, working in Defendant's Quincy, Illinois plant. Plaintiff was laid off in January 2009 but rehired in April 2010. From approximately 2011 forward, Plaintiff worked as a low pressure tester/inspector on Line One under the supervision of Dwain Kurfman.

Plaintiff went through orientation when she was originally hired and again when she was rehired. Plaintiff received and signed for an employment handbook and knew Defendant's rules and policies governing her employment and workers' compensation claims and other injuries. Defendant's safety policy states:

> It is your responsibility to report all work-related accidents/illnesses immediately to your supervisor. If for some reason your supervisor is unavailable, advise the Safety Manager of the accident/illness. . . There are no exceptions.

Plaintiff knew she was responsible for reporting any on-the-job injuries immediately to her supervisor or to the Safety Department.

Defendant's employee conduct policy states:

> These offenses listed below are considered extremely serious and will, in most cases, lead to immediate discharge.

One of the offenses listed is "Willfully falsifying records or information."

On or around July 24, 2013, Plaintiff reported to Defendant that she hurt her left wrist.  Plaintiff first reported the injury to her "lead hand"[2], Molly Kindhart, who then passed the information on to Plaintiff's supervisor, Dwain Kurfman.  Kurfman informed Rick Nesbit, the environmental health and safety manager in Defendant's Safety Department, of Plaintiff's injury.  Plaintiff filled out and signed an "Employee Statement" representing that she had injured her left wrist unplugging tanks.

Several days later, Plaintiff visited Defendant's occupational health doctor in Hannibal who examined and treated Plaintiff's wrist and allowed her to return to work.  Following Plaintiff's injury in July 2013, the Safety Department began receiving doctors' notes regarding Plaintiff's medical condition.  Beginning on August 15, 2013, Plaintiff also saw her personal physician, Dr. Owais Iqbal, who continued treatment for Plaintiff's wrist.

---

[2] Plaintiff's supervisor, Dwain Kurfman testified that a "lead hand" is like an assistant.  Kurfman Dep. at 27 (d/e 15-3).

On August 27, 2013, Plaintiff filed a claim with the Illinois Workers' Compensation Commission claiming a work injury to Plaintiff's "L. wrist and body."

In August 2013, Plaintiff began to experience shoulder pain. On August 22, 2013, Plaintiff saw Dr. Iqbal.  Dr. Iqbal moved Plaintiff's arm during that visit, and Plaintiff experienced sharp pain in her shoulder during that visit.  The parties dispute whether Dr. Iqbal's movement of Plaintiff's arm during that visit is what triggered Plaintiff's left shoulder symptoms.  Plaintiff admits that she reported at her physical therapy visit on August 30, 2013 that her shoulder started bothering her when Dr. Iqbal moved her shoulder.  Plaintiff asserts this fact is immaterial.

Plaintiff admits that she did not inform Defendant that she hurt her shoulder on the job.  Plaintiff testified, however, that she told the lead hand, Kindhart, that Plaintiff's "left wing" (which meant her left shoulder) was hurting.  In addition, Plaintiff's supervisor, Kurfman, testified that Kindhart told him that Plaintiff was complaining of shoulder pain.  Kurfman told the Safety Department and waited for them to give him direction.   An incident report was not filled out relating to Plaintiff's shoulder pain.

Neither Plaintiff nor Kurfman testified as to when Plaintiff reported the shoulder pain.

In October 2013, Plaintiff was diagnosed with bilateral carpal tunnel syndrome.  Dr. Christopher Main opined in an Independent Medical Examination that Plaintiff's bilateral carpal tunnel syndrome conditions were a result of her repetitive work activities.

On October 21, 2013, ESIS, Defendant's third-party administrator who makes the decision whether to award workers' compensation, accepted Plaintiff's workers' compensation claims for bilateral carpal tunnel syndrome and approved payment of benefits related to those wrist conditions.   Plaintiff ultimately had carpal tunnel release surgeries on her wrists on November 11, 2013 and December 11, 2013.

In late October, Nesbit received a "workability report" from Dr. Iqbal dated October 22, 2013 that noted Plaintiff's shoulder injury. Because Nesbit had no employee report of an on-the-job injury related to Plaintiff's left shoulder, Nesbit determined that the injury was not work related and needed to be handed over to Human Resources to see if the restrictions could be accommodated or

handled under short term disability and the Family Medical Leave Act (FMLA).

Specifically, on October 31, 2013, Nesbit showed Mary Kendrick, Defendant's Human Resource Manager, the October 22, 2013 workability report received from Dr. Iqbal placing Plaintiff on work restrictions due to her shoulder injury. Nesbit showed the report to Kendrick to address because the Safety Department had no record or knowledge of Plaintiff experiencing a work related shoulder injury. Defendant asserts, but Plaintiff denies, that Defendant was unable to accommodate Plaintiff's restrictions prohibiting Plaintiff from lifting five pounds or more.

On November 1, 2013, Plaintiff met with Kendrick. Kendrick informed Plaintiff that Defendant considered Plaintiff's shoulder injury non-work related. Kendrick never asked Plaintiff how Plaintiff thought she hurt her shoulder. Kendrick admitted that Plaintiff never stated that Plaintiff's shoulder injury was not work related. As of November 1, 2013, Plaintiff had never made any claim as to the cause of her left shoulder pain.

Kendrick told Plaintiff that Defendant could not accommodate her restrictions and that Kendrick needed to place Plaintiff on FMLA

leave and start the paperwork for short term disability.  Plaintiff understood and thought Kendrick's assessment made sense. Kendrick gave Plaintiff FMLA paperwork with the employer's portion filled out and explained to her what she needed to fill out and what she needed to take to her doctor.  Kendrick also gave Plaintiff short term disability paperwork and explained what portion she needed to fill out and what she needed to take to her doctor.  Plaintiff agreed with Kendrick that filling out FMLA and short term disability paperwork was the right thing to do.

The bottom half of the short term disability application was filled out and signed by Plaintiff.  Plaintiff marked "no" in response the question that asked, "Did injury occur at work?"  Plaintiff's portion of the form is dated November 1, 2013.

Kendrick told Plaintiff that she would send in the short term disability application and try to help Plaintiff obtain coverage.  At the time of the November 1, 2013 meeting, Kendrick was not aware that Plaintiff had filed a formal petition for workers' compensation benefits.

From November 1, 2013 until December 8, 2013, Plaintiff was placed on leave due to her shoulder injury and in anticipation of

surgery on her wrists.  On November 20, 2013, Plaintiff returned the physician paperwork to Kendrick and Kendrick verbally told Plaintiff that her FMLA leave was approved.

On November 21, 2012, Kendrick faxed in Plaintiff's short term disability application and paperwork to the insurance carrier, Reliance Standard.  Nesbit read to Kendrick the contents of the physical therapist note addressing the cause of Plaintiff's shoulder injury before Kendrick sent in Plaintiff's short term disability application on November 21, 2013.  On the fax cover sheet, Kendrick wrote:

> This shoulder pain is not work-related, which is why she filed for short-term disability.  The carpal tunnel that is noted in the physician notes is work related.  She had carpal tunnel surgery on her one wrist 11/13, and she's receiving Workers' compensation for that while she is off work.  The carpal tunnel surgery on the other wrist is scheduled for December.  This is also work-related.

Plaintiff's short term disability claim was ultimately denied.[3]

On November 14, 2013, Plaintiff was informed by Dr. Iqbal that her shoulder pain might be work related.  Prior to that time, she had never been told that her shoulder condition was work

---

[3] See Def.'s Statement of Undisputed Fact ¶ 68, which cites Plaintiff's testimony that she was advised by the insurance company in Mid-November 2013 that her claim for short-term disability benefits was denied because the injury was work related.  Pl.'s Dep. at 104-105.

related.  Plaintiff admits that she never told Kendrick at any time
that she believed her shoulder injury to be work related.   Plaintiff
asserts that she never had an opportunity to inform Defendant's
Health and Safety Department that her left shoulder condition was
work related or fill out an Accident Report for that injury because
she was off work at the time that Dr. Iqbal rendered his November
14, 2013 opinion as to causation.  Defendant did not receive the
report from Plaintiff's November 14, 2013 visit until January 3,
2014, after Plaintiff's termination.

On December 6, 2013, Plaintiff signed an application for
adjustment of her workers' compensation claim indicating she
injured her left shoulder at work on August 22, 2013.  Prior to the
termination of Plaintiff's employment, the only information
Defendant had received regarding the cause of Plaintiff's shoulder
injury was a physical therapy note stating that the doctor had hurt
Plaintiff's shoulder while manipulating it.  Plaintiff knew that until
the filing of her worker's compensation application, Defendant did
not know that she was claiming that her shoulder was work related.
Subsequent to the termination of Plaintiff's employment, ESIS, the
third-party administrator, accepted Plaintiff's shoulder injury for

workers' compensation.  On December 18, 2014, the Illinois
Workers' Compensation Commission approved contracts for a lump
sum settlement for all three of Plaintiff's workers' compensation
claims.

Plaintiff was released to work by Dr. Iqbal following her wrist
surgery and returned to work on or about December 16, 2013.  On
December 18, 2013, Kendrick called Plaintiff into her office for a
meeting with Kendrick and Kurfman.  Kendrick informed Plaintiff
that her employment was being terminated because she had
falsified information.  Kendrick informed Plaintiff that the
falsification existed in the discrepancy between Plaintiff's short
term disability paperwork and Plaintiff's workers' compensation
paperwork.   The Notice of Termination stated:

> Received information from [Plaintiff's] attorney that her
> shoulder pain was being filed as work related.  [Plaintiff]
> indicated on her STD claim statement that this was not
> work related.  Falsification of information is a violation of
> the company conduct policy.

Kendrick made the decision to terminate Plaintiff's
employment for falsification of documents after discussing the
situation with Wanda Hendrix, McWane's Human Resources
Director, and Tom Schilson, Manchester Tank's General Manager.

While both parties assert that the facts are largely undisputed, the parties dispute a number of facts either as immaterial, inaccurate, or both. For instance, Plaintiff admits that other employees have been discharged for falsifying information but asserts this is immaterial.

In addition, Plaintiff asserts that, in October 2013, ESIS denied Plaintiff workers' compensation benefits relating to her left shoulder condition. This claim appears to be based on Plaintiff's August 26, 2013 workers' compensation claim asserting a work injury to Plaintiff's "L. wrist and body." <u>See</u> Claim (d/e 15-1). Plaintiff's workers' compensation attorney, Philip Bareck, spoke to Donovan Fincher, Defendant's workers' compensation adjuster at ESIS on November 5, 2013. Bareck requested that ESIS approve Plaintiff for total temporary disability benefits beginning November 1, 2013 while Plaintiff was off work due to her left shoulder restrictions. Fincher, on behalf of ESIS, declined to pay workers' compensation benefits related to Plaintiff's left shoulder injury.

Defendant asserts that, to the extent Plaintiff claims that ESIS denied Plaintiff benefits related to her shoulder, the record reflects that Defendant was not involved in ESIS's decision-making process.

Defendant also disputes Plaintiff's claim that ESIS denied workers' compensation benefits for the shoulder injury in October 2013 because Plaintiff admits that when she filed her first workers' compensation claim she was not making a claim for an on-the-job injury to her shoulder.  Def. Resp. at 14, ¶ 40 (d/e 17).

Plaintiff also asserts that she received three disciplinary write-ups within six weeks of her filing her first workers' compensation claim on August 28, 2013.  Defendant admits this, but Defendant asserts that Plaintiff also received disciplinary write-ups prior to filing her first workers' compensation claim.  Plaintiff testified that the three write-ups were for offenses also committed by her co-workers but that the co-workers were not disciplined.  Defendant asserts these facts are immaterial and that Plaintiff did not know if the co-workers were actually caught committing the same violations as Plaintiff.

Finally, when asked if she had any reason to think she was terminated for a reason different than what Kendrick had told her, Plaintiff testified:

> Because I've learnt [sic] out there that if you get hurt, you
> get an attorney, you are out the door.  Not just my
> supervisor, but my lead hand told me while this Work

> Comp. was going on to make sure everything is by the
> book because they will be watching me and finding every
> reason to get rid of me.

Knuffman Dep. at 68.  Defendant admits Plaintiff so testified but

asserts that, to the extent there is a dispute whether Kindhart or

Kurfman made those statements, the dispute is immaterial because

neither was a decisionmaker in the termination of Plaintiff's

employment.  <u>See</u> Def. Reply at 10, ¶ 34 (d/e 22).

## IV. ANALYSIS

Defendant argues it is entitled to summary judgment because

Plaintiff was not terminated for exercising her rights under the

Workers' Compensation Act but for falsification of documents.

Specifically, Plaintiff stated on her short term disability application

that the shoulder injury was not work related but submitted a

workers' compensation claim swearing the shoulder injury was

work related.  Plaintiff argues she is entitled to summary judgment

because Defendant terminated Plaintiff's employment because she

exercised a right under the Illinois Workers' Compensation Act.

In Illinois, it is unlawful to terminate an employee in

retaliation for exercising her rights under the Illinois Workers'

Compensation Act.  <u>Kelsay v. Motorola, Inc.</u>, 374 Ill. 2d 172, 185 (1978); <u>Hartlein v. Ill. Power Co.</u>, 151 Ill. 2d 142, 159 (1992).  A valid claim for retaliatory discharge in the workers' compensation context requires a showing that the employee (1) was an employee of the defendant before or at the time of the injury; (2) the employee exercised a right granted by the Workers' Compensation Act; and (3) the employee's discharge was causally related to the exercise of her rights under the Act.  <u>Grabs v. Safeway, Inc.</u>, 395 Ill. App. 3d 286, 291 (1st Dist. 2009); <u>see also</u> <u>Dotson v. BRP US, Inc.</u>, 520 F.3d 703, 707 (7th Cir. 2008).  The employee bears the burden of proving all the elements of the cause of action.  <u>Clemons v. Mech. Devices Co.</u>, 184 Ill. 2d 328, 336 (1998).

The parties do not dispute the first two elements of the claim. The only issue in this case is whether Plaintiff can establish that a causal connection exists between her exercise of a right granted by the Illinois Workers' Compensation Act and her termination.

The defendant employer can, but is not required to, assert that it had a valid basis for firing the employee.  <u>Id.</u>; <u>Goode v. Am. Airlines, Inc.</u>, 741 F. Supp. 2d 877, 892 (N.D. Ill. 2010).   If the employer asserts a valid, non-pretextual reason for discharging the

employee, and the trier of fact believes it, the causation element is not met.  <u>Clemons</u>, 184 Ill. 2d at 336.  The ultimate issue concerning causation is the employer's motive in discharging the employee.  <u>Id.</u>[4]

If the defendant provides a valid basis for the termination, the plaintiff can survive summary judgment by showing that the employer did not honestly believe the reasons it gave for the termination.  <u>Goode</u>, 741 F. Supp. 2d at 892.  "This requires more than simply showing that the defendant made a mistake or based its decision on bad policy."  <u>Id.</u>  The plaintiff has to provide evidence that the employer tried to cover up the real reason for the termination through lies or deceit.  <u>Id.</u>

In this case, Defendant asserts that Plaintiff was discharged because Plaintiff submitted a false short term disability application for a shoulder injury that she indicated was not work related.  Given the discrepancy between the two documents, Defendant determined Plaintiff violated Defendant's written policy against falsification of documents when Plaintiff asserted on the short term

---

[4] District courts deciding retaliatory discharge cases governed by Illinois law must apply the standard of the state law to a motion for summary judgment and not the federal <u>McDonnell</u> <u>Douglas</u> standard.  <u>Gacek v. Am. Airlines, Inc.</u>, 614 F.3d 298, 303 (7th Cir. 2010).

disability application that the injury was not worked-related.
Defendant asserts it was for that reason that Defendant terminated
Plaintiff's employment.  Plaintiff argues that she was terminated for
exercising a right under the Illinois Workers' Compensation Act,
namely filing the workers' compensation claim pertaining to her
shoulder.  The parties raise several arguments in support of their
claim that summary judgment is appropriate.

Plaintiff argues, in part, that she is entitled to summary
judgment on liability because Defendant has admitted that its
decision to terminate Plaintiff's employment was directly caused by
Plaintiff's filing of the workers' compensation claim regarding
Plaintiff's left shoulder injury.  Plaintiff points to Kendrick's and
Nesbit's testimony in support of that conclusion.  <u>See</u>  Pl.'s
Statement of Undisputed Facts at 2-3, ¶¶ 8, 11 (d/e 13); Nesbit
Dep. at 64-65 (wherein Nesbit testified that he believed that the
event giving rise to Plaintiff's termination was the filing of the
workers' compensation petition for benefits); Kendrick Dep. at 68-
69 (testifying that she determined the short term disability form was
false when Plaintiff filed her workers' compensation claim).

Defendant asserts, however, that Defendant only admitted

that Plaintiff's workers' compensation claim and Plaintiff's failure to report a work related injury were what demonstrated that Plaintiff's short term disability form was false.  Defendant also asserts that because Nesbit was not a Rule 30(b)(6) witness and was not the decisionmaker, his testimony cannot support a statement regarding Defendant's reasons for Plaintiff's termination.   Def. Resp. at 3-4, ¶¶ 8, 11.

Plaintiff is not entitled to summary judgment.  "The causality element . . . requires more than a discharge in connection with filing a claim." Marin v. Am. Meat Packing Co., 204 Ill. App. 3d 302, 308 (1st Dist. 1990) (also refusing to consider a negative statement by an employee of the defendant who was not a decisionmaker with respect to the plaintiff's termination). Therefore, the mere fact that the workers' compensation claim purportedly revealed that Plaintiff had made an earlier false representation does not show, as a matter of law, that Defendant terminated Plaintiff for exercising a right granted by the Workers' Compensation Act.  See, e.g, Carter v. Tennant Co., 383 F.3d 673 (7th Cir. 2004) (affirming award of summary judgment in favor of the employer where the employer terminated employee for

falsification after the filing of the workers' compensation claim
revealed that the employee had previously lied on a health
questionnaire the employee completed as part of the employment
application process); <u>Goode v. Am. Airlines, Inc.</u>, 741 F. Supp. 2d
877, 894 (N.D. Ill. 2010) (the fact that the alleged dishonesty was
related to the employee's injury did not mean that the employee was
terminated for claiming benefits).   Therefore, Plaintiff is not entitled
to summary judgment.

Defendant argues, in part, that it is entitled to summary
judgment because Plaintiff admitted that her short term disability
paperwork was a false report, confirming the validity of her
discharge.  Def. Mem. at 22 (d/e 14), citing <u>Wayne v. Exxon Coal
USA, Inc.</u>, 157 Ill. App. 3d 514, 518 (5th Dist. 987) (reversing bench
trial decision in favor of the plaintiff  because the plaintiff
acknowledged at trial that defendant had a valid reason for
plaintiff's discharge).  Specifically, when asked whether she agreed
that the short term disability was actually a "false report," Plaintiff
responded, "I guess so."  Knuffman Dep. at 68.   Plaintiff now
disputes that her short term disability paperwork was a "false

report." See Pl.'s Resp. at 9 (d/e 18) (disputing Defendant's Statement of Undisputed Fact ¶ 84).

Taking the evidence in the light most favorable to Plaintiff, the Court finds that the cited testimony does not establish that Plaintiff admits that Defendant had a valid basis for terminating her. At most, it suggests that Plaintiff, at the time of the deposition, acknowledged that the statement in the short term disability application was false in light of subsequent evidence that the shoulder injury was, in fact, work related.

The Court now turns to the crux of this case: whether there is sufficient evidence for a rational jury to conclude that Defendant's reason for firing Plaintiff was pretextual. See Goode, 741 F. Supp. 2d at 894. Taking the evidence in the light most favorable to the non-moving party, the Court finds that neither party is entitled to summary judgment.

Defendant has presented evidence from which the trier of fact could find that Defendant had a valid, nonpretextual basis for discharging Plaintiff. However, Plaintiff has also presented evidence from which the trier of fact could conclude that Defendant's true

motive was to discharge Plaintiff for exercising a right under the Illinois Workers' Compensation Act.

Taking the evidence in the light most favorable to Plaintiff, Plaintiff presented evidence that she advised her lead hand, who advised her supervisor, who advised the Safety Department, that Plaintiff's left shoulder hurt.  No reports were filled out, despite such forms being filled out when Plaintiff had earlier told her lead hand about an injury to her wrist.

When the Safety Department received the workability report from Dr. Iqbal in late October 2013 noting Plaintiff's shoulder injury, Nesbit concluded that the injury was not work related and contacted Kendrick in Human Resources.  Kendrick then proceeded to tell Plaintiff that her shoulder injury was not work related and that she should apply for FMLA leave and short term disability benefits. Kendrick admits she never asked Plaintiff if her shoulder injury was work related.  This evidence could support an inference that Defendant was concerned that, because Plaintiff had earlier reported shoulder pain, Plaintiff had injured her shoulder on the job and would file a workers' compensation claim regarding her shoulder.  A reasonable jury could infer that Defendant attempted

to lock Plaintiff into the position that the shoulder injury was not work related by telling Plaintiff that the shoulder was not work related and having her complete short term disability forms.  See, e.g. Siekierka v. United Steel Deck, Inc., 373 Ill. App. 3d 214, 222 (3rd Dist. 2007) (finding a genuine issue of material fact regarding causality where there was evidence to support an inference that the employer set in motion a process that made it impossible for the plaintiff to return to work in the time permitted by company policy). A jury could also conclude that, when Plaintiff filed a workers' compensation claim for the shoulder injury, Defendant terminated Plaintiff not because she purportedly lied on the short term disability application but in retaliation for filing a workers' compensation claim for her shoulder injury.  See, e.g., Grabs, 395 Ill. App. 3d at 295 (noting, in case where there was conflicting evidence whether the plaintiffs could return to work, that the plaintiffs would be entitled to summary judgment if the change of plaintiffs' attendance coding was based solely on the independent medical examination opinions and the defendants terminated the plaintiffs for failing to return to work or call in their absences).

Other evidence, taken in the light most favorable to Plaintiff, supports an inference that Defendant was motivated by Plaintiff exercising her rights under the Illinois Workers' Compensation Act. This evidence includes the timing of the termination—within days of the filing of the shoulder workers' compensation claim—Plaintiff's testimony that she was disciplined three times immediately after filing the worker's compensation claim regarding her wrist while other employees were not disciplined, and Plaintiff's supervisor's alleged statement suggesting that Defendant did not look favorably on employees who filed workers' compensation claims. See Gordon v. FedEx Freight, Inc., 674 F.3d 769, 775 (7th Cir. 2012) (temporal proximity is a factor to be considered but is not sufficient by itself to for a jury to infer the defendant was improperly motivated). Although Plaintiff's supervisor was not the decisionmaker, such a statement provides some evidence probative on the issue of the employer's motivation.

In addition, Kendrick's interpretation of Defendant's policy also supports Plaintiff's claim. Defendant's policy provides that an employee would likely be immediately terminated for "[w]illfully falsifying records or information." See Discipline Policy (d/e 13-1).

When asked at her deposition how she defined "willfully falsifying records or information," Kendrick testified that she believed it meant giving the company false information.  Kendrick Dep. at 15 She further stated, "I consider that willful when you give us false information."  Id.

Defendant acknowledges that Kendrick's definition is inaccurate in terms of the legal definition of the word "willful" but argues that Kendrick is not a lawyer and should not be held to a legal standard in interpreting company policies.  However, the fact that Kendrick defines any false statement as "willful," when considered with the other evidence, creates a genuine issue of material fact regarding Kendrick's motivation.

The Court notes that, for purposes of this case, Defendant could fire Plaintiff for no reason, a bad reason, and even an illegal reason, so long as Defendant did not discharge Plaintiff for exercising a right under the Workers' Compensation Act.  Clemons, 184 Ill. 2d at 337.  However, given all of the facts cited above, taken in the light most favorable to Plaintiff, the trier of fact could find that Defendant's termination of Plaintiff was not for the stated

reason that she falsified a document but was in retaliation for exercising a right under the Act.

Because the Court finds that genuine issues of material fact remain, the Court will not address Plaintiff's other arguments regarding Section 8(j) of the Workers' Compensation Act and Illinois public policy. In addition, because the Court did not rely on the disputed paragraphs of Philip Bareck's Declaration, the Court denies Defendant's Motion to Strike Portions of the Declaration of Philip Bareck as moot.

## V. CONCLUSION

For the reasons stated, Plaintiff's Motion for Partial Summary Judgment (d/e 12) and Defendant's Motion for Summary Judgment (d/e 14) are DENIED. Defendant's Motion to Strike Portions of the Declaration of Philip Bareck (d/e 16) is DENIED AS MOOT because the Court does not rely on any of the disputed statements to find a genuine issue of material fact. This case is set for a Final Pretrial Conference on April 25, 2016 at 3:00 p.m. The parties are reminded to comply with Local Rule 16.1 and the Court's Standing Order on Final Pretrial Conferences, Exhibits, and Jury Instructions. The proposed final pretrial order shall be filed by

noon on April 22, 2016.  The jury trial is scheduled for May 31,

2016 at 9:00 a.m.

**ENTERED:  March 3, 2016**

**FOR THE COURT:**

                                        **s/Sue E. Myerscough**
                              **SUE E. MYERSCOUGH**
                              **UNITED STATES DISTRICT JUDGE**